Good morning. Illinois Appellate Court First District Court is now in session. The Fourth Division, the Honorable Justice Bettina Lampkin presiding, case number 22-0026, Priscilla Vargas v. The Town of Cicero Police Pension Fund. Thank you, Darren. Good morning. Let me just apologize, counsel, to both of you. We had another matter that went on longer than we anticipated, and we didn't really have any choice. We had to continue it. What we're going to do is give each side 15 minutes, and if the parties can identify themselves for the record and who you represent. Yes, good morning, Your Honor. Joseph Ponsetto, P-O-N-S-E-T-T-O, with the law firm of Peter DeLongis, and we represent Priscilla Vargas in this matter. All right, and counsel, you're going to have 15 minutes. Would you like to reserve any of that time for rebuttal? Yeah, I would say five minutes. All right, thank you. Hopefully, I'm going to zero right in on the point and not belabor it over and over. All right, thank you. And counsel, if you could identify yourself. Justices Jerry Marzullo, M-A-R-Z-U-L-L-O, of Asher, Gittler, and D'Alba, and I'm legal counsel for Defendant Appalee, The Town of Cicero Police Pension Fund. Thank you for your time today. Thank you. All right, Mr. Plin, is it Ponsetto? You can proceed, sir. Yes, it is. Yes. Our matter involves the death of Officer Samuel Vargas, a Cicero police officer who passed away a number of years ago, and he passed away as well, all laid out in the briefs, passed away as a result of a heart attack while at roll call. Okay. That is the undisputed facts, as we would allege. After passing, his widow met with Cicero police, met with Cicero police pension, and was awarded what we'll refer to as a regular pension, as though Officer Vargas passed away something non-related to work, and she has been collecting that pension ever since. Upon meeting with her, a number of years... Counsel, you're going to waste your time. We know the facts. Tell us why she falls under 612E, or why she falls under 114.3. Okay. As I believe that page four of our reply brief, clearly by walking into, I'll rewrite it, Officer Vargas was not performing an act of duty. We're not arguing that here. You're conceding 112E is no basis for the award of the pension to her. That's the 114.3 applies. Okay. 114.3 indicates very clearly that if an officer is performing a duty, and the definition of that is something assigned by his police chief, okay, which does include certainly attending roll call for the start of the day, and suffers a, very specifically, a heart attack or stroke during that, that shall be considered an act of duty. Counsel, I read your argument, and in your argument, you keep leaving out the language in 114.3, and that is, suffers a heart attack or stroke as a result of the performance and discharge of police duty. There's evidence in this record from doctors who testified at hearings that he didn't suffer that heart attack as a result of the performance of any duty. Now, she introduced evidence where she had doctors who suggested that what he had done the day before may have been a causative factor, but the board clearly had doctors that said he didn't suffer that heart attack as a result of the performance of duty. How do you get around the result of it? Our position, which has been clarified, I guess it would be asking why would the legislature include this in the statute if it was any different from the regular causation statute for act of duty? They're clearly making a differentiation between an injury and the act of duty, which, you know, would lead to death. Okay, if you have that, you need to prove the causation. We're conceding that, even though we did go through the process of doctors and everything, and, you know, putting forth what the standard was. If you, like you say, you've read everything, the federal policy on looking, you know, 24 hours back, we're past that, but if, in fact, there was no legislative intent to differentiate between a heart attack and a stroke, why put this in here? There's no need for this to be placed in here. This is saying, if, in fact, you're performing your duties and very specifically have a heart attack or stroke, not, you know, not fall down the stairs, not fall off, you know, your stool at lunch or anything, that is why we believe so strongly that this is, should be applied, the law should be applied to our uncontroverted facts, and as I said, it's not a real expansive argument, but, and then, obviously, we have, you know, Swanson gets back to the performance of duties. Swanson, he was at home. We would not be able to be making this argument if Officer Vargas passed away at home. What we're saying is, what makes this different and what makes it unique, and as we've also said, this is a case of first impression in analyzing it from the standpoint of an officer who dies on duty or in the performance of duty. That is where the legislature has said, if, in fact, you're doing that and have the heart attack or stroke, there is no causation element in that as far, I certainly, you know, agree that it does say as a result of, but that is referring to the performance of duty. He, yeah, he was walking in, and in this situation, the legislature clearly intends to give a greater benefit to the officer in the world of heart attacks and strokes, and that's all we have, and that is, as I say, we concede, never like to concede, but in going through the process, we did make an effort to show the causation standard, which we believe would apply, but we could not ask the appellate court to go against the board's finding of facts in that situation. This situation, we're saying, is completely looking to ask you to analyze the case de novo and grant the Vargas family the full benefits of the act of duty, which is clearly laid out in 114.3, that it shall be considered as having been injured in an act. My question is a simple one. You don't dispute, I suppose, the finding of the fund that the heart attack was not caused by an act of duty. They found that, and they also found nor was the heart attack the result of the performance and discharge of police duty, so there's no result here. You don't dispute. I would say that we would dispute no result, but that is... Your argument is it was the result of the performance of and discharge of police duty. Yeah, we firmly believe that if the legislature had intended to make this a causation argument, there's no need for this statute to be put in. Now, as we said in the reply brief, as I said in there, that could be amended or cleared up, but it's certainly... There's no need for this statute to be placed in there if, in fact, all the pension boards are going to look at is causation. But if... Well, but doesn't it have the purpose of making an act of police duty or translating a police duty, performance of a police duty, into an act of duty when you're dealing with a heart attack or a stroke? Isn't that its purpose? I think that is exactly what it does, yes. But it still contains a causation element in the words, as a result of. That's what our position is, is that that language does not put in a causation element. And our reasoning on that, I guess, goes to legislative intent, but is why would they, if they did say causation in there, that would just be mimicking the other statute. They're consciously making an effort to separate heart attacks and strokes from a regular disability or death, either on duty or off duty. But to lump the heart attack and stroke victims in with, as unfortunate Mr. Swanson, that's something that and I guess our argument is, there is certainly, I can't argue, as a result of, couldn't be read as causation. But our argument against it is that the legislative intent would have been, why put this in here at all, if you're not trying to give the added benefit to the police officer or the fireman to say, okay, in this special circumstances, you're going to get the full benefit, you're in your family, which is what we have, like I say, constantly been saying. And I mean, it's taken us a long time to get to this point to zero in on this exact issue. But that is, I feel very strongly on that. And that is not not I, I mean, as somebody looking at the law, on behalf of the police officers, that and I, you know, you can't guess why there is no, you know, appellate court opinions on this, or anything. And that could be, nobody ever would argue against this. If somebody, I'm sure throughout the state, there have been numerous, you know, heart attacks and stroke, while in the performance of duty, where I would assume the pensions are just granted, and it's never been litigated. Swanson was litigated because of the very point that he did not, he did not fit into this, the four corners of this statute, because he was not performing part of his police work, as assigned by the police chief. So I guess that's, that's, I think I'm tracking exactly on how I said it in the briefs. And that that that's what we're, that's what we are hoping is as a result of this. So sure. Yeah, I was just what's that? It's you, it seems like you're just having, you're asking us to excise to take out the words as a result. And when I look at when I've looked at this, it seems like 114.4-3 makes the performance, the performance of duty, the same thing as an act of duty. If you have a heart attack or a stroke, while you're performing acts that really aren't inherently involving special risks, etc. But you still have to have the heart attack or the stroke as result of meaning causation, something you did in the performance of your duties that was not inherently risky. And I'm trying to, I don't want to think, I'm trying to think of an example, I was thinking maybe you're bringing your police officer and you're walking an arrestee into the police department and you put them in the lock up. And you haven't had any heart problems at all. And you have a stroke. And they can't think of any reason why you have the stroke other than maybe it's the stress of your job or something. But then they would give you a full line pension because you were in the performance of your duty, putting someone in the lockup. And during that 20, I think it's a 24 hour period, then you had the heart attack and it could possibly have been the cause of you having the heart attack. They would equate performance of duty as the same thing as an act of duty and you'd get the 100% pension. But I don't know how you can excise out the words and act like they weren't there as a result of the performance. Well, please, in no way am I being disrespectful to that, to the language in the statute. We see it and we've made our efforts to distinguish that rather than not asking you to to excise it. But if they wanted to say it was caused by performance of duties, okay, they could have said that. They did not. And in trying to give the officers the full benefit, saying in these special circumstances, if you have a heart attack or stroke, and you're doing anything during the day that's assigned by your chief, that shall be considered. They make the leap to act of duty, but they're saying that to make the leap to active duty, there you go. What we're saying is, and what they have said is as a result of, but we don't think that there was any legislative intent to change because they didn't need to put this in here. If it's all going to be causation, there you go. You would just address the heart attack or stroke the same as any other injury in determining the disability. And there's no reason for them to put this language in, which is, I assume, put in there to help out the families of the police and firemen. Certainly, no way disrespecting the court or the legislature to say, excise that language out. But we're asking you to interpret it in a way that there is no reason for that language to be different other than the legislature wanting it to be different from a in place when this has been put in. That's our position. Judge Hoffman or Judge Rashford, did you have any additional questions? No, thank you. All right. Thank you, counsel. Mr. Marzullo. Justices, again, thank you for your time. To Justice Lampkin and Justice Hoffman's points, just to get right into it, there absolutely is a causation requirement under 114.3. The plain language of the statute shows that there is. This very district and the appellate courts in Illinois under Swanson found that there was. What the appellant is asking this court to do is to basically absolutely excise the language under 114.3, which says result of the performance and discharge of police duty. What appellant is asking this court to do is to basically rewrite the statute that says, if you're a police officer in the state of Illinois and you suffer a heart attack or a stroke, you get this benefit under 114.3. It is the plaintiffs, the appellants, who is at the time was the applicant, excuse me, it is the applicant's burden of proof under Illinois law to show entitlement under a disability claim. It was applicant's burden of proof to show that when Officer Vargas was walking into a roll call room and collapsed and died, as terrible as that is, that in order to get the expanded benefit beyond what plaintiff is getting now, that they had to show that this man walked into this room and died as a result of the performance and discharge of police. And when you look at the record, you see that that it's just not possible. First of all, again, I think to Justice Hoffman's talking about the medical records, there were six doctors that gave an opinions in this matter. Three of them were contracted out independently by the pension board through a third party provider. All three of those doctors came back and said, there's no way that this is in any way related to police duty. Terms such as random event and taking time bomb, et cetera, were used to show that this individual had all of these previous chronic conditions and that he just happened to be in uniform that day. If he would have been at home, Justices, and he would have called in sick that day, he would have died on the couch. He just went to work that day. The doctor that did the opinion on the federal benefits, which again, Justices, is a completely different standard in a wholly separate area of law, as you know, from article three of the pension code. The federal doctor even stated, this has nothing to do with an act of police duty. And again, I'm speaking in general terminology. Doctor is the exact language in the 2000 pages of records here. But even the federal doctor stated that this had nothing to do with anything. The two doctors that appellant contracted out for, for independent medical examinations. Again, both of them, one said could have been caused or contributed. The other doctor, which was Dr. Ashagi said, maybe possibly could have, we don't know. And they actually linked it possibly if potentially the actions that were discussed on October 1st, the day before the death. And I'm going to get to that right now. Possibly maybe cause it contributed to the heart attack, et cetera. Now, with that being said, Justices, what happened is, is that the pension board allowed the applicant to place anything that it want, that she wanted into the record, police reports, any radio traffic, the federal death benefit report, et cetera. And indeed called the very Cicero police officer who was responsible for compiling all that for the federal benefits and federal records. And lo and behold, members of the court, what you have when you drill down in that no police report, no witnesses that there was this short foot chase, the, the, the possible shots fired, wasn't shots fired. The individuals that they came upon that, that the officer thought he was gonna have to, I don't, I can't remember members of the court come into contact with, or have some type of police activity. I think we're like two kids making out and they were shooed back to Morton East High School. So this individual, what you saw from the record didn't engage in any of this vigorous police activity. And in addition to that, what happened was, and what the record shows is, is that officer Vargas finished the shift on October 1st, came home on October 2nd, and then did some type of lawn work, yard work, or actual physical exertion. And it is at that point in time that he then complains to Priscilla, Miss Vargas, that he's not feeling well, et cetera, wakes up, goes to work, and is simply in the act of walking into the roll call room when he collapsed and died. And this is exactly the facts and what this very district pushed the pension boards to do and the analysis to do under Swanson. This is Swanson. Contrary to appellant's arguments, members of the court, the Swanson, the stroke did not take place at home. The stroke took place in the roll call or in a training while this officer was on duty. And when he was talking to the sergeant and he claimed that he was animated and upset with his sergeant that he wasn't called out for a burglary call, he then starts suffering stroke symptoms after having months and months of just kind of reason. Months and months of having those warning signs, justices, and then he has the stroke while he's in the roll call room. And this very court said under the manifest weight of the evidence, it is the plaintiff's burden of proof, and that there was ample evidence to show that that stroke was not caused by as a result of a discharge of police duties. It is exactly what has taken place in the Vargas matter justices. Well, if I could interrupt Mr. Marzullo, today it seems to center on statutory interpretation and the use of the word as a result of. Do you find that any different from 112E that uses the words resulting from? I mean, 112E does not use the word caused, right? No, but under 114.3 and what this court found is that it has to be caused by as a result of some type of, excuse me, your honors, it has to be called result of the performance and discharge of police duty. So to the justices point, the question then becomes what is a police duty? And to Justice Lampkin's statements previously, police duty is defined as section, we get that again under 5-113 of the code, Chicago police, which is transferred over to article three, which is any act of police duty inherently involving special risks not ordinarily assumed by a citizen in the ordinary walks of life, et cetera, et cetera. So the court, excuse me, the board is required to determine if an act of police duty caused the heart attack, which obviously caused the death of officer Vargas and the board properly found that it was not an act of police duty. It was from all of these other underlying medical conditions. How do you respond to your opponent's argument that there'd be no need for 1.114.3 if caused by is the standard because then they'd be entitled to the pension under 112E? Well, it seems to be the appellant's argument that the simple fact that this man was in uniform and walked into roll call that day, that that is enough to trigger the police duty and that is enough to trigger benefits under 1.114.3. But you're not answering my question. Opponent is arguing that if caused by is the standard in both 112E and 1.114.3, then 1.114.3 is totally superfluous. The person would be covered under 112E. So what was the purpose of 1.114.3? The purpose of 1.114.3, first of all, it can't be because then that would just render the entire section of 1.114.3 completely meaningless. And why did the legislature pass that? So there is a difference between the two. What's the difference? The difference under 1.114.3 is to analyze whether or not there was an act of police duty. And the act of police duty here, excuse me, to analyze whether an act of police duty under 1.114.3, if you look at the statute, excuse me, because I want to get it correct, whether or not the act of police duty caused. So the statute is result of the performance and discharge of police duty. All right. 1.114.3 says if death occurs as the result of the performance of duty. How's that different? In order for the appellant to win on that claim, what you would have to find, Justices, is that what caused the heart attack that caused the death of Officer Vargas was the walking into the roll call room. That's the difference. No, no. We're not worried about Vargas right now. We're worried about the comparison of two statutes. How are they different? And don't tell me because one's walking into a roll call room and another one isn't. It's irrelevant. How are they different? 1.114.3 says as the result of performance and discharge of police duty. And 1.112.e says as a result of the performance of duty. Of an act of duty. Correct. How are they different? I don't believe that they are different. So in other words, there was no reason for 1.114.3, which is what your opponent is arguing. But the problem for the appellant in this case is that regardless of whether or not the state legislature, the problem is that the appellant fails under both standards. I understand what your argument is. He can't win regardless of what the standard is, even if 1.114.3 is interpreted to be the same as 1.114.3. You say he can't win either way because it wasn't the result of a police act under any circumstance. But Justice, so let me explain it this way. And I'm sorry, I think I understand the issue now. An act of duty is particularly defined, as you know, I think I just read it, 5-113 under that inherent risk, not ordinarily in the walks of life, et cetera, et cetera. That is the actual magic term of act of duty, correct? If under 1.114.3, we're just talking about the performance or discharge of police duties, which is a different standard, that very well may be a different standard. And it very well may be an actual lower standard. So any police duty, other than an act of police duty, if you suffer a stroke or a heart attack. 1.114.3 converts a heart attack or stroke suffered in the discharge of any police duties into an injury in the performance of an act of duty. I would agree with that. And so I understand. I'm sorry. I do understand that there is the difference. I agree. It is what we argue. I don't know if we argued it very eloquently as the justice did in our brief, but that is correct. But here's the thing. Here's the thing, Justice. The thing is, is that even though that there is a different, there's a different standard. So it might not be an act of duty under, you know, Filscoff and Alm and all of these other cases. It is the appellant's burden of proof to show that a police duty caused the heart attack. And right now, what the board found is that is that it wasn't a police duty. So even if the justice is fine, hey, you know, he had to show he showed up to work that day as part of his police duties, he has to walk into the roll call room. And in walking into the roll call room, he suffered the heart attack and he died. And even if the justices say that that is a police duty that is separate and still compensable under 114.3, because it's different than the act of duty under 114.1, it is still the burden of the appellant to show that the simple fact of the police duty separate from the active duty of walking into the roll call room, that it is the police duty that caused the heart and it is just extraordinarily clear members of the court that that didn't happen. So the justice's analysis of 114.1 and 114.3 is 100% correct. Even if you find that police duty is a separate standard, and it is absolutely different than active duty under 114.1, and that it could be a lesser included or a lesser requirement that it's now just a police duty, not an active duty inherent to the risk of police officers only. It's still on the appellant to show that it's that. And by the way, justices, not the, I can't even remember how many pages of chronic medical issues and conditions that led us to this date. And the board's taking into account the allegations of his police duties on October 1st, discounting those, because it's very clear that really those didn't happen. Quite honestly, possibly they were exaggerated for federal benefits. I don't know, but we did take that into account. We did dismiss those based on the actual facts of what may or may not happen. We did then have the intervening issue of him doing the lawn work and yard work by plaintiff's own affidavit, then complaining that that's when he started to not feel bad. And he just happened to walk into the roll call room. So the reason why appellant fails here under 114.3, if it is such a different standard than the active duty under 114.1, is that it wouldn't have mattered if he was walking into 7-Eleven, Morton East High School, Cicero Police Department, Chico Liquors. I'm from the neighborhood. I know the area. If he would have walked into one of the TV on the couch, it was his time, as unfortunate as that is. And that's the difference between 114.1 and 114.3. And I apologize to Justice Hoffman. I think I was, I got it right eventually, at least in my mind. So, excuse me, when you have all of these doctors that are stating this has nothing to do with walking into the roll call room, when you have the board looking at what actually did happen on October 1st when he was at the department, or again, with appellant's burden of proof, that there, again, no reports, no radio traffic, you know, no witnesses to some of these things, no shots fired call, when you have those things, when you have the intervening act of this individual doing the lawn work and yard work, you take all that, you put it into the mix on a manifest way to the evidence, which again, is exactly what Swanson did. You find that the board's decision was proper here under the manifest way to the evidence standard and the overwhelming evidence. So there is causation. It's just a different causation to 114.1. Any further questions, Justice Hoffman or Justice Rochford? All right. Thank you, Mr. Ponsetto. I'd just like to reiterate that we think that there is a strong difference between the two it's very obvious that everybody is well versed on it, but in getting to the definition or the difference between active duty and performance, a police officer shall be considered on duty while on any assignment approved by the chief of police of the department of the municipality in which he or she serves, whether the assignment is with or without outside the municipality, which is what we submit is the entire reason for this added benefit or lower standards, as council says, it's not a lower standard, it's the legislature trying to, you know, to back up our first responders. And, uh, we would ask that you find that, uh, 114.3 applies and, uh, and grant Ms. Vargas the, or Ms. Vargas and her family, the full, uh, active duty, uh, pension benefits that, that are referred to and what, uh, again, we'll say clearly is the, uh, legislative intent and not, uh, no lack of deference to the language in there as a result of, but we submit that that clearly does not establish the same causation, uh, requirements, uh, earlier in the statute. Thank you very much for, for being focused on the issues that made it very, very, uh, very comfortable for us to put our position forward to you. So thank you. All right. Thank you. Uh, thank both of you council. We will have a decision shortly and we now stand adjourned and the judges will stay on for a moment.